PROVIDED TO OKEECHOBEE CORRECTIONAL INSTITUTION ON 11-09-22 FOR MAILING BY NPJ

FILED
2022 NOV 14 PM 3:55
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: **MIDDLE** |
|---|---|
| Name (under which you were convicted): **Brandon Boykins** | |
| Place of Confinement: **Blackwater River C.F., 5914 Jeff Ates Rd., Milton, Fl. 32583** | Prisoner No.: **E37317** |
| Petitioner (include the name under which you were convicted) **Brandon Boykins**  v. | Respondent (authorized person having custody of petitioner) **State of Florida** |
| The Attorney General of the State of: **FLORIDA** | |

## PETITION

**Comes Now,** the Petitioner, Brandon Boykins, under rule § 2254 (e) (2) (B) which states a determination of a factual issue made by a State court shall be presumed to be correct, that the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. Under subsection (2), if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows: (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In the context of a federal habeas petition filed under 28 U.S.C. § 2254 (e) (2), the Eleventh Circuit discussed the standard for obtaining an evidentiary hearing in Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002):

> This provision places a fairly stringent limitation on the power of the federal courts to order evidentiary hearings in habeas cases. Indeed, if a Petitioner fails to develop an adequate factual record in the State courts, an evidentiary hearing could only be ordered if one of the two narrows exceptions to the general rule prohibiting such hearing applied.

1

However, the question of what exactly constitutes a "failure to develop" the factual basis for a claim is State court is one on which we have not spoken. The Supreme Court, however, pointed out that "comity is not served by saving a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim is State court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by 28 U.S.C. § 2254 (e) (2).

In the instant case, the previous postconviction motion clearly indicates that Mr. Boykins sought an evidentiary hearing on his newly discovered evidence claim and *Brady* claim. The State court denied him the opportunity to present the Brady claim, by dismissing it as newly discovered evidence. The State court order denying this claim stated that Mr. Boykins could have found out this information before he file his postconviction relief motion back in 2011. Mr. Boykins did not know that the State had withheld any information and that there was evidence proving such until he finally was able to purchase the State Attorney file at considerable cost to him after receiving his EIP stimulus money. Mr. Boykins has been a prisoner since 2008 with no means of paying for this file. The very rule, Florida Rule 3.850 (b) (1) states:

**(b) Time Limitations.** A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final unless it alleges that:

(1) *the facts on which the claim is predicated were unknown to the movant or the movants attorney and could not have been ascertained by the exercise of due diligence, and **the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence;***

Mr. Boykins, upon being able to obtain these files from the State Attorney's Office, was able to discover with the exercise of due diligence that the State did in fact withhold knowledge that Mr. Boykins was not re-read his Miranda rights during breaks in questioning. In light of this fact, 28 U.S.C. § 2254 (d) (2) reaffirms the fact that Mr. Boykins has the right for his claim to be heard by the following:

    **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless the adjudication of the claim*

    **(2)** *resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*

*Breedlove*, 279 F.3d at 959-60. See also *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1988) ("We join every other circuit that has confronted this question and hold that where, as here, a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a State court has prevented him from doing so.

As in *Breedlove*, the State court denied Mr. Boykins the opportunity to present evidence related to his claim and therefore Mr. Boykins was prevented from developing a factual basis for his claim in State court. Hence, Mr. Boykins is not precluded from an evidentiary hearing in this proceeding and the Court should grant him one.

<u>Statement of Facts in this case are as follows:</u> The State filed charges on Mr. Boykins on July 23, 2008, and charged the Defendant with the following: Count I-First Degree Felony Robbery with a Firearm, Florida Statute §812.12 (2) (A).

On July 24, 2008, the Petitioner was appointed Assistant Public Defender Mr. Scott Sterling. Then on September 16, 2008, Mr. Boykins entered a plea of not guilty to the charge in this case. A hearing was held were Mr. Boykins was asked to sign a blank plea agreement, which he refused. After refusing to sign a blank plea agreement, Mr. Boykins was forced to go to trial while still having multiple issues with his appointed counsel.

On two different attempts, Mr. Boykins informed the Honorable Marlene M. Alva of his concerns about Mr. Sterling's ability to represent him against the State's charge. Mr. Boykins knew the seriousness of the allegations against him and felt like Mr. Sterling did not have his best interest in mind. Mr. Boykins wrote two letters to the Judge Alva, the first on June 8, 2009, which

3

was denied and the second one on March 1, 2010 which resulted in a Nelson Inquiry being granted. A Nelson hearing was given on March 1, 2010, but denied Mr. Boykins new counsel. At this point, Mr. Boykins had no other choice than to proceed to trial with Mr. Sterling representing him.

There were two Motions to Suppress Admission, Confession and Statements (June 9, 2009 and February 4, 2010) in which both were denied. It is this information that Mr. Boykins is contesting in this newly discovery claim where the State questioned the police officer in an e-mail as to if Mr. Boykins was re-advised of his *Miranda* rights when the officer started questioning Mr. Boykins for the third time. The Officer stated in his reply e-mail that he did not reinstate Mr. Boykins' *Miranda* rights. This is the bases of the newly discovered evidence in which Mr. Boykins unearthed through diligent efforts in order to prove the State withheld this information. Had this information been revealed in regards to two motions to suppress said admission, confession and statements, the trial court would have had no other avenue than to grant the motion to suppress and said un-mirandized statements would have not been used by the State in which to convict Mr. Boykins.

Recently Mr. Boykins, obtained the State Attorney file and unearthed newly discovered evidence. Mr. Boykins presented this new information on a 3.850 postconviction motion to the lower court which denied it as not being newly discovered. The tribunal never even assessed the actually argument because Mr. Boykins failed to develop the factual basis of a claim in State court proceedings. Mr. Boykins was robbed of his constitutional right to present newly discover evidence under the rules as they apply to due process. The facts underlying this claim would have been sufficient enough to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Mr. Boykins comes before this court seeking federal relief asking that this newly discovered claim be given an evidentiary hearing to determine the trueness it so rightly deserves.

Just recently, the lower court in and for Seminole County denied the Petitioner's 3.850 alleging newly discovered evidence stating that this information could have been discovered back in 2011 when the Petitioner filed his first postconviction motion. Then on July 26, 2022, the Fifth District Court of Appeal affirmed the lower court's decision. (2008-CF-3754-A and 5D22-1355.) The facts of law here favor the Petitioner in regards to this newly discovered evidence because there is no way this information could have been known by the trial court, the party, or counsel at the time Mr. Boykins proceed to trial. Henceforth, it meets the criteria for newly discovered. Then the second prong of the Jones test is meet because this new information **"weakens the case"** against Mr. Boykins.

This petition relies on rule § 2254 (e) (2) (B) to establish the facts in light of this newly discovered evidence. The interest of justice clearly weighs in favor of the Petitioner. It is readily apparent when viewing this case in total that a hearing should be held to determine that this evidence is viable and would have changed the outcome of this case. In light of this newly discovered, Mr. Boykins presents his one and only argument below:

### ARGUMENT

**THE PETITIONER IS BEING ILLEGALLY DETAINED IN THAT HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE STATE OF FLORIDA USED UN-MIRANDIZED STATEMENTS AGAINST HIM AT TRIAL.**

The Petitioner has uncovered newly discovered evidence, exculpatory in nature, revealing that the State withheld information retaining to statements used during trial that were un-mirandized. The Petitioner recently requested and paid for the State Attorney's file and through diligent research found an exchange between the State Attorney and Officer Sabounji.

5

The State Attorney questioned Officer Sabounji on August 1, 2008 in a letter if he re-read Miranda rights to the Petitioner during breaks in questionng. The State Attorney specifically asked Officer Sabounji this question, due to the fact the Petitioner invoked his right to counsel. Then on the same day, Officer Sabounji replied back with an e-mail stating that he did not read the Petitioner his Miranda rights once the conversation was reinitiated. Officer Sabounji claims that because he did not ask no questions, he did not have to read the Defendant his Miranda rights. (See Exhibit A) The statements and/or admissions by the Petitioner were not made voluntarily. Officer Sabounji pressed the Petitioner about this case. These statements were then used at trial against the Petitioner violating his Miranda rights along with his Fifth and Sixth Amendments to the U.S. Constitution.

A pause in the questioning took place and at no time was the Petitioner re-advised of his rights as set forth in *Miranda v Arizona*, 86 S. Ct. 1602 (1966). His recorded responses in reply to the questions asked him by the Officers, however, were used to the jury in the State's case-in-chief that served to substantially damage his reputation and any credibility before his jury trial. It should be noted that before this interrogation began, Petitioner was required to take an oath attesting that the statement that he was about to give was the truth. This didn't happen.

The Petitioner recently obtained a copy of the State Attorney's file at a sufficient cost to himself in order to prove this issue. The new evidence shows that there is not an intelligent and knowing waiver of the Petitioner's rights under Miranda and that the statements were not voluntary.

However, at no time during the period of reinitiating questioning was the Petitioner informed that he had the right to remain silent or that he had the right to talk to a lawyer for advice prior to the Officer re-questioning him or to have one present during questioning. Before trial, the

6

Petitioner was told by trial counsel that these un-mirandized statements would not be used, however, during trial the Petitioner was informed by his trial counsel that if he testified, these same un-mirandized statements would be used to impeach him. Thus, this caused confusion and led to the Petitioner not testifying in fear that he would be impeached.

The record revealed circumstances, including the absence of Miranda warnings and certain statements by the officers calculated to delude the Petitioner as to his true position, exerted an improper and undue influence over Petitioner's mind under Fourteenth Amendment. The trial court erred in admitting Petitioner's statement, and that error was not harmless. See *Wilson v State*, 242 So. 3d 484 (2nd DCA 2018).

Statements obtained from a defendant in violation of the right against self-incrimination, also known as a privilege, cannot be used against the Petitioner at trial.

The Miranda exclusionary rule serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation. The Fifth Amendment prohibits use by the prosecution in its case in chief only of compelled testimony. Failure to administer Miranda warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under Miranda. Thus, in the individual case, Miranda's preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm. It is the State's burden to prove that a statement was voluntarily made.

An interrogation takes place when a state agent asks questions or engages in actions that a reasonable person would conclude are intended to lead to an incriminating response. The harmless error test requires the State to prove beyond a reasonable doubt that the error complained of did

not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

It is well-settled that in *Miranda v Arizona*, 86 S. Ct. 1602 (1966), the United States Supreme Court held that in order to protect an accused Fifth Amendment Privilege against self-incrimination during the inherently coercive custodial interrogation setting, certain procedural safeguards must be employed. As a general matter, the Court has held that an individual taken in Police custody and subjected to questioning must be warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for prior to any questioning if he so desires."

With regard to the right to the presence of an attorney, the Court in *Miranda v Arizona*, expressly recognized the importance of informing a suspect of his right to have an attorney present during questioning.

> "The right to have counsel present during interrogations is indispensable to the protection of the Fifth Amendment Privilege under the system we delineate today." *Id.*, 384 U.S. at 469.

As the Court elaborated:

> "We hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warning of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right. *Id.*, 384 U.S. at 471-472."

The Petitioner asks that this Honorable Court take "judicial notice" of the fact that he asked if he was getting lawyer for free whether he could wait and talk to him? Officer Fuehrer then cut

8

the Petitioner off and said let me finish this first and then you can ask questions, and then proceeded to interrogate the Petitioner. Petitioner is of limited intelligence and did not knowingly and intelligently waived his rights under *Miranda*.

This evidence has never been brought forth heretofore as it is only recently discovered. This vital information should be evaluated to the extent an evidentiary hearing should be held to set in motion the necessary protocol to release an innocent person from being unduly incarcerated. The Court must consider how this newly discovered evidence, had the State not withheld it, would have had, in all probability, a significant impact on the outcome of this trial by not allowing un-mirandized statements against him at trial.

When taken as true for purposes of evaluating the legal sufficiency of the motion, the exculpatory nature of this evidence presents a legally sufficient claim triggering an evidentiary hearing and cannot be conclusively refuted by the record. Only after holding an evidentiary hearing can the circuit court determine if the evidence is credible and newly discovered, whether it would probably produce a different result as to the outcome of Mr. Boykins trial.

Absent a record that conclusively refutes a finding that the newly-discovered evidence is inherently incredible, an evidentiary hearing generally will be required to resolve claims necessarily requiring the trial court to make credibility determinations. See *McLin v. State*, 827 So. 2d 948, 955-57 (Fla. 2002); also *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991).

The postconviction court must "consider all newly discovered evidence which would be admissible" and must "evaluate the weight of the newly discovered evidence."

In evaluating the legal sufficiency of a motion based on newly discovered evidence, the court must accept the allegations as true for the purpose of determining whether the alleged facts,

9

if true, would "render the judgment vulnerable to collateral attack." *Arbelaez v. State*, 775 So. 2d 909, 915 (Fla. 2000) (citing *Ragsdale v. State*, 720 So. 2d 203 (Fla. 1998)).

The determination of whether the statements are true and meet the due diligence and probability prongs of *Jones v. State (Jones II)* usually requires an evidentiary hearing to evaluate credibility unless the new evidence is inherently incredible or obviously immaterial to the verdict and sentence.

Below is a breakdown of the newly discovered evidence being presented and how it meets the two-part pong of newly evidence in *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (*Jones II*):

In regards to meeting the two-pong *Jones II* test for newly discovered evidence, exculpatory in nature, Mr. Boykins asserts that the evidence provided was not known or could not have been known by the trial court, the party, or counsel at the time Mr. Boykins proceed to trial.

The first prong of a newly discovered evidence claim, Mr. Boykins contends that he has provided new and unknown information that in and of itself would prompt this Court to hold an evidentiary hearing to approve or disapprove said information. Mr. Boykins asserts that this new information shows that the exculpatory evidence presented in this motion would cause a grave miscarriage of justice if it is not properly sought out by this Court. The State Attorney knew that Mr. Boykins was not re-read his *Miranda* rights, henceforth, the newly discovered evidence via an e-mail trail between the investigating Officer and the State Attorney clearly proves beyond any reasonable doubt that the statements used against Mr. Boykins were un-mirandized and illegal. The newly discovered evidence in which Mr. Boykins has unearthed meets the first requirement of newly discovered evidence under *Jones*.

Also, Mr. Boykins asserts that this evidence fulfills the second prong of the *Jones II* test by demonstrating beyond a reasonable probability, had this information been fully known the

outcome of his trial would have been different. This newly discovered evidence is of such nature that it would probably produce an acquittal if brought up on a new trial. Moreover, this newly discovered evidence satisfies the second prong of the *Jones II* test because it **"weakens the case"** against Mr. Boykins so as to give rise to a reasonable doubt of his guilty verdict handed out by the jury.

Additionally, regarding the second prong of newly discovered evidence claim, Mr. Boykins' claim does provide evidence that would most definitely produce an acquittal because the State withheld this information from this Court when they were ruling on the motion to suppress the un-mirandized statements. Thus, the outcome in this trial would have been different. By meeting both prongs of the *Jones* test, Mr. Boykins has meet the threshold that his claim has merit and carries sufficient weight as to proving his innocence. See *Jones II*, 709 So. 2d at 521. The newly discovered evidence now offered by Mr. Boykins is of such nature that it most definitely produces an acquittal or yield a less severe sentence.

Mr. Boykins has demonstrated the existence of exculpatory evidence that would create a reasonable probability of a different outcome. With all due respect to this esteemed Court, Mr. Boykins contends that at this pleading stage he has submitted a concrete record-supported postconviction ground that stands both irrefutable from the record, and soundly mounted under the law.

Under these unique circumstances in this case, the newly discovered evidence is consistent and reliable enough that an evidentiary hearing must be held to examine the information which was withheld and has never been brought to light until now.

With the State withholding this exculpatory evidence lead to a Brady violation. *Brady* rule requires that the prosecution not suppress evidence favorable to an accused where that evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. See *Butler v. State*, 263 So.3d 195 (5th DCA 2019) and also *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).

To meet the materiality prong of *Brady*, the defendant must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

Under *Brady* rule, materiality inquiry is not satisfied by simply discounting the exculpatory evidence in light of the undisclosed evidence and determining if the remaining evidence is sufficient; rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Brady* requires the State to disclose material information within its possession or control that is favorable to the defense. See *Riechmann v. State*, 966 So. 2d 298, 307 (Fla. 2007). To establish a *Brady* violation, a defendant must show "(1) that favorable evidence, either exculpatory or impeaching, (this exculpatory evidence was used against the Plaintiff, if not for these un-mirandized statements being used, the landscape in this would have changed in favor of the Plaintiff.) (2) was willfully or inadvertently suppressed by the State, (one can deem from the e-mail trail between the State Attorney and the Officer who interviewed the Plaintiff, they knew before the motion to suppress these statements, were indeed un-mirandized statements.) and (3) because the evidence was material, the defendant was prejudiced (the Plaintiff was prejudiced by these un-mirandized statements being used at trial against him and he had no prior knowledge that they were withheld or un-mirandized statements)." See *Dailey v. State*, 283 So. 3d 782, 789 (Fla. 2019) (quoting See *Taylor v. State*, 62 So. 3d 1101, 1114 (Fla. 2011)); see also See *Turner v. United States*, 137 S. Ct. 1885, 1888, 198 L.Ed.2d 443 (2017) ("[T]he government violates the

Constitution's Due Process Clause 'if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.' ") (quoting *Smith v. Cain*, 565 U.S. 73, 75, 132 S. Ct. 627, 181 L.Ed.2d 571 (2012)).

In assessing *Brady* materiality and ensuing prejudice, we "review the net effect of the suppressed evidence and determine 'whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " See *State v. Huggins*, 788 So. 2d 238, 243 (Fla. 2001) (quoting *Maharaj* v. State, 778 So. 2d 944, 953 (Fla. 2000)). Evidence that is *"too little, too weak, or too distant from the main evidentiary points to meet Brady's standards"* is not material. See *Turner*, 137 S. Ct. at 1894.

Here in this case, the evidence the State withheld was not too little, too weak, or too distant in that it would have changed the evidentiary landscape of the trial by prejudicing the Plaintiff with these un-mirandized statements. This recently disclosed information would have been a game changer, had not this information been made known to the jury. Once a bell is rung, it cannot be unrung. These facts would have change the outcome in these proceedings.

Mr. Boykins contends that the State violated Brady by (1) failing to disclose that they knew these statements were un-mirandized statements, and (2) failing to disclose evidence which would have not given the State the evidence it used to convict the Plaintiff that he is currently serving prison time for.

Under these unique circumstances in this case, the newly discovered evidence is consistent and reliable enough that an evidentiary hearing must be held to examine the information which was withheld and has never been brought to light until now.

The scales of justice are put to the task in reviewing this petition in determining how the State's *Brady* violation in withholding the fact that these un-mirandized statements were used against Mr. Boykins at trial.

## CONCLUSION

The State crossed a Rubicon from legality to illegality. The State's satisfaction with this conviction resulting from withholding evidence, presumptive prejudice, and egregious un-mirandized statements have gone unhindered and unchallenged. Had it not been for these un-mirandized statements being used at trial, the outcome in this case would have been different and in favor of, Mr. Boykins.

**WHEREFORE,** Mr. Boykins requests that this esteemed Court grant all relief to which he may be entitled to in this proceeding, including but not limited to an evidentiary hearing; appointment of counsel for evidentiary hearing and vacation of judgment of convictions and sentences; as well as such other and further relief as the court deems just and proper.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, day, year).

Executed (signed) on _____ (date).

_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.